In the Matter of VISITING NURSE SERVICE OF NEW YORK HOME CARE, Respondent, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants. [786 NYS2d 623]—

Kane, J. Appeal from a judgment of the Supreme Court (Malone, Jr., J.), entered August 22, 2003 in Albany County, which partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Department of Health directing recoupment of Medicaid overpayments made to petitioner.

Petitioner, a not-for-profit certified home health agency providing professional medical care to patients in New York City and the surrounding areas, is licensed and regulated by respondent Department of Health (hereinafter DOH). Petitioner is a participating provider in New York's Medicaid program, which is administered by DOH (see Social Services Law § 363-a; Public Health Law § 201 [1] [v]). Approximately one in six of petitioner's patients qualifies for both Medicaid and Medicare benefits, a situation referred to as dual eligibility. When a dually eligible patient receives care, petitioner must determine which program covers the particular services provided and submit a claim for reimbursement to the appropriate program. Medicaid is the payor of last resort; medical care providers must seek reimbursement from any available third party, including Medicare, prior to billing Medicaid (see 42 USC § 1396a [a] [25]; 18 NYCRR 540.6 [e] [2] [ii]; Matter of Rego Park Nursing Home v Perales, 206 AD2d 781, 783 [1994]). Due to the complex qualifying criteria, the process of making a billing determination can be extremely difficult. Upon receipt of a Medicaid reimbursement claim, DOH pays the amount billed and subsequently conducts a postpayment review to ensure proper billing.

In the mid-1990s, DOH contracted with a private corporation, Center for Medical Advocacy, Inc. (hereinafter CMA), to administer a review program with the goal of recouping amounts paid out by Medicaid that should have been covered by Medicare. CMA reviewed all claims submitted to DOH by home health agencies for dually eligible patients, identified those claims that had a high probability of qualifying for Medicare coverage, then worked with DOH and providers so that those claims were filed with Medicare seeking a coverage determination. DOH thereafter sought to recoup payments that it had made to home health agencies on claims which were covered by Medicare and on claims for which Medicare refused to reach a

coverage determination due to late filing or inadequate documentation.

CMA determined that petitioner's liability to DOH was $38.2 million. Petitioner did not object when DOH recouped the amount attributable to funds actually reimbursed by Medicare after review, but when DOH attempted to recoup amounts exceeding those that petitioner had been paid by Medicare, petitioner commenced this CPLR article 78 proceeding. Supreme Court partially granted the petition and ordered DOH to notify petitioner of the particular cases for which recoupment was sought and provide petitioner an opportunity to be heard. The court ordered DOH to cease recoupment efforts until after the hearing is completed and a final determination is issued. Respondents appeal.

Respondents argue that petitioner does not have any due process rights regarding recoupment of Medicaid payments because it has no protected property interest in such payments. We disagree. Respondents' argument is based on regulations and case law dealing with nursing homes. Those regulations explicitly state that Medicaid reimbursement rates for residential health care facilities are provisional until an audit is performed and completed (*see* 10 NYCRR 86-2.7, 86-2.13). Based on the provisional nature of those rates and payments, providers have no vested rights to those payments, thus no entitlement to a hearing (*see Concourse Nursing Home v State of New York,* 1 AD3d 675, 678 [2003], *lv denied* 2 NY3d 704 [2004]; *Matter of Astor Gardens Health Care Ctr. v Novello,* 304 AD2d 961, 964 [2003]; *State of New York v Hollander,* 245 AD2d 625, 626 [1997], *lv denied* 92 NY2d 801 [1998]). As the regulations pertaining to petitioner's reimbursement do not make such payments provisional (*see* 18 NYCRR parts 517, 518, 519), petitioner has a vested property interest in those payments and is entitled to due process before it can be deprived of them (*see Matter of Medicon Diagnostic Labs. v Perales,* 74 NY2d 539, 545 [1989]). In fact, the regulations specifically provide that "when a determination is made that an overpayment has been made, any person from whom recovery is sought is entitled to a notice of the overpayment and an opportunity to be heard" (18 NYCRR 518.5 [a]; *see* 18 NYCRR 519.4 [a] [2]; 519.5 [a]), including notice of the right to a hearing (*see* 18 NYCRR 519.5 [c]; 519.6). Accordingly, petitioner is entitled to notice and a hearing.

We do not agree with respondents' argument that petitioner was provided with an opportunity to be heard by the administrator of the federal Medicare program and by CMA. DOH must provide petitioner an opportunity to be heard within a DOH

agency forum as a result of its determination to recoup Medicaid overpayments from petitioner. The reviews provided by CMA and the federal Medicare program did not address the appropriate recoupment question, to wit, "Did the provider reasonably attempt to ascertain and satisfy any conditions of approval or other requirements of liable third-party payors prior to submission to Medicaid?"

Respondents also fail in their attempt to overturn the portion of Supreme Court's order ceasing recoupment pending a final determination, as DOH failed to follow the regulatory requirements of giving notice and scheduling a hearing within prescribed time frames (*see* 18 NYCRR 518.8 [permitting recovery of overpayments pending a hearing]). Case law relied upon by respondents holds that "there is no right to a hearing until commencement of recoupment of Medicaid funds" (*Matter of Siddiqui v New York State Dept. of Social Servs.*, 116 AD2d 909, 911 [1986]), a condition satisfied here since millions of dollars in Medicaid funds have already been recouped. Under these circumstances, DOH is not entitled to recoup payments until after issuance of a final determination based upon a hearing.

The parties each cite different subparagraphs of the same regulation to support their opposing contentions as to whether DOH can recoup only amounts actually paid to petitioner by Medicare or any amounts that would have been paid by Medicare but for petitioner's failure to bill Medicare in the first instance. Petitioner does not contest that DOH may recoup any amounts that Medicare actually pays, but argues that it is only required to pay DOH upon "receipt of reimbursement by the provider from a liable third party" (18 NYCRR 540.6 [e] [4]), namely Medicare. Respondents contend that DOH is entitled to all amounts actually paid by Medicare, but also to amounts that Medicare would or should have paid had petitioner billed Medicare at the time the services or equipment were provided. Their contention is supported by the regulation: "The provider must comply with all Medicare or other third-party billing requirements and must . . . ensure that no reimbursement is made by [Medicaid] when the costs of medical care, services or supplies could be borne by a liable third party. If a provider fails to comply with these conditions, any reimbursement received from [Medicaid] in violation of the provisions of this paragraph must be repaid to [Medicaid] by such provider. No repayment will be required if the provider can produce acceptable documentation to [DOH] that the provider reasonably attempted to ascertain and satisfy any conditions of approval or other requirements of liable third-party payors" (18 NYCRR 540.6 [e]

[6]). The purpose of the entire paragraph (e) of 18 NYCRR 540.6, as indicated in its notice of adoption, is "[t]o provide a regulatory basis for requiring providers of medical assistance to pursue and utilize resources of third parties known to have a legal liability to pay for care and services otherwise available from [Medicaid], thus assuring that [Medicaid] remains a 'payor of last resort' " (NY Reg, Oct. 8, 1986, at 16). Considering this regulatory purpose, the subparagraphs cited by each party can be read in conjunction with one another. If Medicare reimburses a provider, the provider must repay Medicaid the reimbursed amount within the listed time frame. Regardless of whether Medicare reimburses the provider, if the provider failed to comply with the conditions of payment, namely by seeking out all other sources of payment before billing Medicaid, then the provider must reimburse Medicaid unless the provider can show that it undertook reasonable efforts to comply with 18 NYCRR 540.6 (e) (6). Here, an administrative hearing is required to determine in which cases petitioner undertook such efforts and in which cases it failed to meet its obligations under the regulations.

Peters, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.